IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 12-07047 |
| INDRESCOM SECURITY TECHNOLOGY INC. | CHAPTER 7 |
| Debtor | |
| NOREEN WISCOVITCH RENTAS | ADV. PROC. 14-00209 |
| Plaintiff | |
| vs. | |
| JOSE A. RODRIGUEZ GOMEZ | |
| Defendant | |

OPINION AND ORDER

This case is before the court upon the *Motion Requesting Entry of Summary Judgment* (Docket No. 25) filed by the Chapter 7 Trustee (hereinafter referred to as "Trustee" or "Plaintiff") and the *Defendant's Opposition to Plaintiff's Summary Judgment* (Docket No. 43) filed by José A. Rodríguez Gomez (hereinafter referred to as "Defendant" or "Mr. Rodríguez"). The Trustee alleges that the Debtor's President, Mr. José Rodríguez Gomez, made preferential and/or fraudulent transfers to himself within one year of the bankruptcy filing pursuant to 11 U.S.C. §§ 547(b) & 548 (Docket No. 25). The Defendant in his *Opposition to Plaintiff's Motion for Summary Judgment* argues that there are factual disputes which are material to the outcome of this case, namely that the Trustee does not satisfy the requirements under 11 U.S.C. §547(b)(1) and (b)(2) for these transfers to constitute a preference claim. The Defendant has raised the defenses pursuant to 11 U.S.C. §547(c)(1) & (2)(A) (Docket No. 43). The Trustee filed her *Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment* arguing that the Defendant failed to provide evidence regarding the defenses he raised under section

-1-

547(c)(1) and (c)(2)(A) (Docket No. 44). For the reasons stated herein the Trustee's *Motion Requesting Entry of Summary Judgment* is denied and the Defendant's *Opposition to Plaintiff's Motion for Summary Judgment* is granted in part and denied in part.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(1) and (b)(2)(F) & (H). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code on September 6, 2012 (lead case, No. 12-07047[1]). The Debtor in its Schedule E (Creditors Holding Unsecured Priority Claims) listed twenty-eight (28) claimants whose claims for wages, salaries and commissions were incurred in the years 2011 and 2012 and the total amount of the claims was $22,096.74. The 341 meeting of the creditors was initially scheduled for October 11, 2012 and it was continued twelve (12) times and closed on November 15, 2013 (lead case, Docket Nos. 4, 6, 8, 11, 12, 15, 23, 27, 30, 34, 36, 37, 38, 39, 41 & 44).

On September 3, 2014, the Trustee initiated this adversary proceeding based upon alleged preferential transfers and fraudulent transfers pursuant to 11 U.S.C. §§547 and 548 made by Debtor's President to himself within one year of filing (November 18, 2011- May 16, 2012) the bankruptcy petition. On October 6, 2014, the *Defendant filed a Request for Extension of Time to Answer Complaint of Otherwise Plead* of thirty (30) days and the same was granted by the court on October 15, 2014 (Docket Nos. 7 & 8).   On November 15, 2014, the *Defendant filed a Second Request for Extension of Time to Answer Complaint or Otherwise Plead* of thirty (30) days and the same was granted on November 18, 2014 (Docket Nos. 10 & 11). On December 12, 2014, the Defendant filed his *Answer to the Complaint* (Docket No. 13).

---

[1] References to the lead case are to the entries and documents filed in the bankruptcy case, case number 12-07047 (ESL).

On January 16, 2015, a preliminary pretrial conference was held and the court granted the parties 60 days to conclude discovery. The parties were granted 90 days to file dispositive motion and replies are due 14 days thereafter (Docket No. 14).

On April 16, 2015, the Trustee filed a *Motion Requesting Extension of Time* of 21 days to inform the status of negotiations or file dispositive motions (Docket No. 17) and the court granted the same on April 21, 2015 (Docket No. 18). Subsequently on August 5, 2015, the Trustee filed a *Motion Requesting Extension of time* (45 days) to conclude discovery (Docket No. 20) and the court granted this motion on August 14, 2015 (Docket No. 21). On October 7, 2015, the Court notified and ordered the parties that a pre-trial conference would be held on January 22, 2016 (Docket No. 23).

On January 15, 2016, the Trustee filed a *Motion Requesting Entry of Summary Judgment* alleging that the Debtor's President made preferential and/or fraudulent transfers to himself within one year of the bankruptcy filing pursuant to 11 U.S.C. §§ 547(b) and 548. The Trustee argues that the payments made by the Defendant meets all of the requirements of a preferential transfer under 11 U.S.C. §547 namely: (i) the payments were made to a creditor; (ii) the payment was on account of an antecedent debt, "an alleged loan that, if [it] occurred,  it was prior to the payments being made and the bankruptcy filing;" (iii) while the Debtor was insolvent; (iv) during the preference period (from November 2011 to May 2012); and (v) it would allow the creditor to receive more that it would receive under a Chapter 7 liquidation". The Trustee also alleges that these payments made by the Debtor's President to himself meet all of the requirements of a fraudulent transfer pursuant to 11 U.S.C. §548 because there was a monetary transfer that is subject to avoidance under applicable law and the Defendant did not provide Debtor a reasonable equivalent value in exchange (Docket No. 25). On January 15, 2016, Plaintiff also filed the *Statement of Facts in Support of Motion for Summary Judgment* (Docket No. 26).

On January 21, 2016, the parties filed a *Joint Motion Requesting Pretrial Conference be Vacated and Set Aside or Converted into a Status Conference* (Docket No. 27) and said

motion was granted by the court on January 21, 2016 (Docket No. 28). On January 22, 2016, the status conference was held. The court continued the pretrial hearing without a date, pending a decision of the motion for summary judgment. The Plaintiff was granted 7 days to supplement the motion for summary judgment and the Defendant was granted 21 days thereafter to oppose. The Plaintiff was granted 14 days to reply. The Court noted that the parties need to determine if there are material issues of fact in controversy (Docket No. 29). On January 28, 2016, the Trustee filed a *Motion Submitting Document in Support of Request for Summary Judgment* which consisted of the Trustee's unsworn declaration under penalty of perjury in support of motion for summary judgment (Docket No. 33). On February 28, 2016, the Defendant filed his *First Request for Extension of Time to Oppose Plaintiff's Motion for Summary Judgment* of thirty (30) days and the court granted said motion on March 1, 2016 (Docket Nos. 34 & 35). On April 10, 2016, the Defendant filed his *Second Request for Extension of Time to Oppose Plaintiff's Motion for Summary Judgment* of thirty (30) days and the same was granted by the court on April 12, 2016 (Docket Nos. 38 & 39).

On May 10, 2016, the Defendant filed his *Statement of Uncontested Facts & Exhibits Opposing Summary Judgment* (Docket No. 42). Also on even date, the Defendant filed his *Opposition to Plaintiff's Summary Judgment* in which he admits that the funds drawn from the corporation's bank account were drawn in his name within the year prior to the bankruptcy petition. The Defendant argues that the Debtor owed the employees wages for contemporaneous services to the corporation and the Debtor paid for these services through one single check payable to the Defendant to facilitate the payment of payroll and mitigate possible insufficiency of funds for employees upon cashing the checks for payment. However, he argues that there are factual disputes which are material to the outcome in this case, such as: (i) neither the Defendant nor the employees had antecedent debts to be considered creditors of the Debtor in conformity with 11 U.S.C. §§547(b)(1) and 547(b)(2); (ii) Defendant denies having benefitted to any extent of the $10,870.62 which the Trustee seeks to void; (iii) the Defendant has raised the defenses pursuant to 11 U.S.C. §547(c)(1) & (2) and §548(a)(1)(A)

and argues based on employees' declarations that evince that the employees benefitted from the $10,870.62 received in payment for their services and work for the benefit of the Debtor corporation. "The payment made to each employee was intended and made in contemporaneous exchange for new value given to the debtor, and in fact a substantially contemporaneous exchange;" (iv) the employees' salaries were paid with the funds in issue ($10,870.62) and these payments were made in the ordinary course of business or financial affairs of the debtor and the transferee; (v) the Trustee has failed to establish the element of "insolvency of the debtor" but instead has attached bank statements to establish an integral element of preference or fraudulent transfer; (vi) the Trustee has failed to establish pursuant to 11 U.S.C. §547(b)(5)(B) that the creditor received more than such creditor would have received had the transfer not been made; and (vii) the Plaintiff has failed to show the Defendant's intent to defraud, delay or hinder the act of paying legitimate salaries to the employees of the Debtor through checks payable to the Defendant instead of to the order of each of the employees (Docket No. 43).

The Trustee filed her *Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment* arguing that: (i) the alleged amounts paid to Debtor's employees do not match the amount of the checks. The total amount of the transfers made to Defendant was for $10,870.62 and the total amount paid to Debtor's employees was for $10,326.42; (ii) the Trustee denies that that the transfers made by the Defendant were used to pay the Debtor's employees; (iii) the transfers were made to allegedly pay Defendant for payments made by him 4 to 27 days prior; (iv) the Defendant admits that the Debtor made those transfers while it was insolvent; (v) these transfers allowed the Defendant to receive more than it would under a Chapter 7 liquidation. The Trustee further argues that the Defendant fails to provide enough evidence as to the "ordinary course of business defense" under 11 U.S.C. §547(c)(2)(A) due to the following: (i) the Defendant fails to provide enough evidence to prove that the transfers made to his favor were used to pay the employees; (ii) there is no evidence of pre-preferential period to establish a "baseline of dealings" to present an ordinary course of business defense;

and (iii) there is no set payment pattern that can be interpreted as constituting an "ordinary course of business" defense. The Trustee also contends that the Defendant fails to prove all of the requirements to establish the defense of "contemporaneous exchange for new value" pursuant 11 U.S.C. §547(c) due to the following: (i) Defendant does not provide any evidence regarding that the intention of the parties was for the transfer to be a contemporaneous exchange for new value given that the payments were made to Defendant 4 to 27 days after the alleged payments of wages were made; (ii) "… none of the payments [were] made in cash and actually made during the delivery. The five payments were perfected from 4 to 27 days after the alleged cash payment of salaries was made;" and (iii) Defendant has not provided evidence as to the new value he provided to Debtor and the amount of the new value. The only evidence provided was the alleged payment of wages that does not coincide with the amount of the transfers or the date of the alleged wage payments. In the alternative, the Trustee contends that the transfers were fraudulent pursuant to 11 U.S.C. §548 because the "Defendant's alleged payments of salary did not occur or were related to the checks paid to Defendant, the corporation did not have a previous debt owed to Defendant nor a reason to transfer the amount of $10,870.62. Therefore, the transfers were fraudulent" (Docket No. 44).

The issue the court must first resolve is whether the Trustee has proven by preponderance of the evidence all of the elements of these alleged preferential transfers in conformity with 11 U.S.C. §547(b).

The parties agree as to the following uncontested material facts (Docket Nos. 26 & 42):

<u>Material Uncontested Facts</u>

1. Defendant is the President of Debtor Corporation, Indrescom Security Technology, Inc. Therefore, Defendant is considered an insider.

2. As part of the financial disclosure, Debtor submitted copies of several transfers made to Defendant.

3. Debtor's President drew several checks on the Debtor Corporation's bank account with Banco Popular de Puerto Rico ("BPPR") payable to Defendant in the total amount of $10,870.62. These transfers occurred during November 2011 to May 2012. (Docket No. 26- Exhibit A & Docket No. 42, Exhibits 1-4).

4. On November 22, 2011, Defendant drew check #21479 in the amount of $2,257.00 payable to himself on Debtor's corporate bank account with BPPR. The check was endorsed by Defendant. (Docket No. 26- Exhibit A & Docket No. 42, Exhibits 1-4).

5. On March 26, 2012, Defendant drew check #22201 in the amount of $1,807.00 payable to himself on Debtor's corporate bank account with BPPR. The check was endorsed by Defendant. (Docket No. 26- Exhibit A & Docket No. 42, Exhibits 1-4).

6. On March 29, 2012, Defendant drew check #22253 in the amount of $1,624.91 payable to himself on Debtor's corporate bank account with BPPR. The check was endorsed by Defendant. (Docket No. 26- Exhibit A & Docket No. 42, Exhibits 1-4).

7. On March 30, 2012, Defendant drew check #22271 in the amount of $2,988.21 payable to himself on Debtor's corporate bank account with BPPR. The check was endorsed by Defendant. (Docket No. 26- Exhibit A & Docket No. 42, Exhibits 1-4).

8. On May 16, 2012, Defendant drew check #22207 in the amount of $2,193.50 payable to himself on Debtor's corporate bank account with BPPR. The check was endorsed by Defendant. (Docket No. 26- Exhibit A & Docket No. 42, Exhibits 1-4).

## Applicable Law and Analysis

*Standard for Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment should be entered "if

-7-

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, 3d, Vol 10A, § 2712 at 198. "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the

nonmoving party.  Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157 (1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991).  It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial.  Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial.  López, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case.  Celotex, 477 U.S. at 325. See also, Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11.  In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987).  See also, Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464.  A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party.  Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made.  López, 938 F.2d at 1517.  The

-9-

nonmoving party need only oppose a summary judgment motion once the moving party has met

its burden.  Adickes, 398 U.S. at 159.

For the reasons explained below, this court denies the Trustee's *Motion Requesting Entry of Summary Judgment* and grants in part the Defendant's *Opposition to Plaintiff's Motion for Summary Judgment* regarding the issue that the Trustee did not satisfy all of the requirements under 11 U.S.C. §547(b) and denies in part the Defendant's opposition as to the defenses presented pursuant to 11 U.S.C. §547(c)(1) and (c)(2) given that the same are premature at this stage of the proceedings.

*Preferential Transfers pursuant to 11 U.S.C. §547*

Section 547(b) empowers the trustee to avoid certain prebankruptcy transfers which are considered "preferences" if the Trustee proves all of the elements of an alleged preference claim pursuant to 11 U.S.C. §547(b). Section 547(g)[2] establishes that the Trustee has the burden of proving by a preponderance of the evidence all of these elements. See 11 U.S.C. §547(g); See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.13 (16th ed. 2016); Warsco v. Preferred Tech Group, 258 F. 3d 557, 564 (7th Cir. 2001).  Thus, in order to prevail on a motion for summary judgment, the Trustee must establish that there is no genuine issue of material fact regarding each element of the preference claim. See Williams v. McKesson Corp. (In re Quality Infusion Care, Inc.), 2013 Bankr. Lexis 5044 (Bankr. S.D. Tex. 2013) citing Goodman v. Ferro Mgmt., Inc. (In re Gulf Fleet Holdings, Inc.), 2013 Bankr. Lexis 2663 (Bankr. W.D. La. 2013). There are two purposes behind the avoidance of preferential transfers; namely; (i) to discourage creditors from racing to the courthouse and dismember the debtor's

---

[2] 11 U.S.C. §547(g) provides: "[f]or the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." 11 U.S.C. §547(g).

-10-

assets and (ii) most importantly to further the bankruptcy policy of equality of distribution amongst the debtor's creditors. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.01 (16th ed. 2016).

Section 547(b) provides that:

"Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
   (A) on or within 90 days before the date of the filing of the petition; or
   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
   (A) the case were a case under chapter 7 of this title;
   (B) the transfer had not been made; and
   (C) such creditor received payment of such debt to the extent provided by the provisions of this title." 11 U.S.C. §547(b).

If the trustee fails to prove all of the elements of a preference claim pursuant to section 547(b), the defendant transferee does not need to prove that it falls within one of the statutory exceptions under section 547(c). However, even if the trustee proves all of the elements of a preference claim, the transfer may not be avoided if the defendant transferee proves by preponderance of the evidence that the transfer satisfies one of the exceptions pursuant to 11 U.S.C. §547(c). See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.04 (16th ed. 2016); Burtch v. Revchem Composites, Inc. (In re Sierra Concrete Design, Inc.), 2015 Bankr. Lexis 2344, at *16 (Bankr. D. Del. 2015).

The first element that the Trustee must prove under section 547(b)(1) is that the transfer was "to or for the benefit of a creditor." A transfer is only preferential if what was transferred

constituted an interest of the debtor in property. See 11 U.S.C. §101(54)[3]. "As the explicit language of the Bankruptcy Code makes clear, however, the transfer need not be made directly by the debtor; indirect transfers made by third parties to a creditor on behalf of the debtor may also be voidable under the Code." Warsco v. Preferred Tech. Group, 258 F. 3d at 564 quoting Dean v. Davis, 242 U.S. 438, 443, 61 L. Ed. 419, 37 S. Ct. 130 (1917) ("Mere circuitry of arrangement will not save a transfer which effects a preference action from being invalid as such").

Section 101(10)[4] defines the term "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."11 U.S.C. §101(10). Section 101(5) defines the term "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. §101(5).

In the instant case, the Trustee has presented copies of several checks from the Debtor's corporate bank account with BPPR payable (to the order of) to the Defendant which is the

---

[3] Section 101(54) defines the term "transfer" as:
"(A) the creation of a lien;
(B) the retention of title as a security interest;
(C) the foreclosure of a debtor's equity of redemption; or
(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
(i) property; or
(ii) an interest in property." 11 U.S.C. §101(54).
[4] Section 101(10) defines the term "creditor" as:
"(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;
(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(h) or 502(i) of this title; or
(C) entity that has a community claim." 11 U.S.C. §101(10).

-12-

Debtor's President. These checks constitute transfers of "interests of the Debtor in property." See 11 U.S.C. §101(54); Official Comm. of Unsecured Creditors v. Columbia Forest Prods. (In re Hardwood P-G, Inc.), 2007 Bankr. Lexis 2054 (Bankr. W.D. Tex. 2007)(holding that transfers "by either wire transfer from the [d]ebtor's bank account or by check from the same account is prima facie evidence that the transfers are transfers of interests of the debtor in property").

As to the requirement that these transfers were made for the benefit of a creditor (which in the instant case is the Debtor's President), the Trustee simply states that, (i) "[t]he payments were made to a creditor of the Debtor on account of a previous debt, prior to the payments being made and the bankruptcy filing;" (Docket No. 25, pg. 7, ¶ 24 & ¶26); (ii) "Defendant alleges that the transferred funds were used to pay for salaries of Debtor's employees. However, the amounts of the transfers do not match the alleged amounts paid to the employees;" (Docket No. 44, pg. 6, ¶28); (iii) "[a]ll of the checks state that [they] were for the benefit of Defendant and he fails to provide evidence that would allow this Honorable Court to conclude that the funds were used to pay for Debtor's employees' salaries;" (Docket No. 44, pg. 6, ¶29); and (iv) "[e]ven if the transfers made to Defendant were used to pay Debtor's employees, which is denied, the transfers were made to allegedly pay Defendant for payments made by him from 4 to 27 days prior" (Docket No. 44, pg. 5, ¶ 18). The evidence referenced by the Trustee to prove this first element are the copies of the cancelled checks, its statement of uncontested facts (Docket No. 25-1, pgs. 1-2, ¶ 1-7), several bank statements from Debtor's commercial account at Oriental Financial Group and the Trustee's unsworn declaration under penalty of perjury in support of its motion for summary judgment (Docket No. 33). After considering the same, this court concludes that the Trustee has failed to prove that the Defendant was a creditor with a

claim against the Debtor. Thus, the court concludes that the first requirement under section 547(b)(1) was not satisfied.

Section 547(b)(2) requires that the transfer be "for or on account of an antecedent debt" owed by the Debtor before such transfer was made. The term "antecedent debt" is not defined by the Bankruptcy Code. A debt is considered "antecedent," "…if it is incurred before the transfer: the debt must have preceded the transfer. While courts hold that a debt is 'incurred' when the debtor first becomes legally bound to pay, settlements of claims have been found to be preferential transfers within the meaning of section 547(b)(2)." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 547.103[4] (16th ed. 2016). As to the requirement that these transfers were made "for or on account of an antecedent debt owed by the debtor before such transfer was made" the Trustee has stated: "the payment was on account of an antecedent debt, *to wit*, an alleged loan that, if occurred, it was prior to the payments being made and the bankruptcy filing—See Exhibits A, B. See also, Plaintiff's statement of facts #1-7" (Docket No. 25, pg 7, ¶ 26); (ii) "[e]ven if the transfers made to Defendant were used to pay Debtor's employees, which is denied, the transfers made to Defendant were used to pay for antecedent debts owed by Debtor to Defendant (Docket No. 44, pg. 5, ¶22); (iii) "[e]ven if the transferred funds were used to pay for the salaries, which is denied, this is an admission that Defendant was a Debtor's creditor of an antecedent debt since Debtor owed the amounts previously paid by Defendant and/or to hinder or defraud other creditors during Debtor's admitted insolvent state (Docket No. 44, pgs. 6-7, ¶31); (iv) "… the payment was on account of an antecedent debt, *to wit,* as an alleged refund for amounts paid by Defendant prior to the transfers being made" (Docket No. 44, pg. 12, ¶58). The court concludes that the Trustee's allegations do not prove by preponderance of the evidence the first element or the second element under section 547(b)(1) and (b)(2).

The second element is dependent on proving the first element which is that the transferee is a creditor that has a claim against the Debtor and that the payment of such claim is based upon an antecedent debt. The Trustee's statements regarding the antecedent debt requirement are contradictory because the Trustee denies that the alleged preferential transfers to Defendant were used to pay the employees' salaries but at the same time relies on the transferee's defense pursuant to section 547(c)(1), (2) to evince the first two (2) elements of these alleged preferential transfers. The court finds that no evidence has been presented that proves that the Defendant was Debtor's creditor and that such payments were on account of an antecedent debt. No evidence has been presented to the court that proves what the Defendant did with the monies that he transferred to himself besides his own allegations that he paid four (4) of the Debtor's employees with the cash that he obtained from the corporate checks that he issued on his behalf.

The court notes that these alleged payroll expenses were for the period of November 2011 to May 2012. The Debtor in its Schedule E (Creditors Holding Unsecured Priority Claims) listed twenty-eight (28) claimants whose claims for wages, salaries and commissions were incurred in the years 2011 and 2012 and the total amount of these claims was $22,096.74. Debtor's Schedule E discloses certain individuals which have claims for wages, salaries and commissions for the years 2010 (1 individual), 2011 (1 individual) and for January 2012 (3 individuals). As to the remainder of the claimants (23 individuals) the Debtor only discloses that these debts were incurred in the year 2012, the month in which these debts were incurred is not disclosed.

At this juncture, the court finds that it is unmeritorious to continue the analysis as to whether the Trustee satisfied all the requirements of a preference claim under section 547(b) given that this court has determined that the Trustee failed to prove the first two (2) elements.

Thus, the court does not need to analyze the defendant transferee's defenses under 11 U.S.C. §547(c)(1) and (c)(2).

*Fraudulent Transfers pursuant to 11 U.S.C. 548(a)(1)(A) & (B)*

The Trustee's alternate argument is that these were fraudulent transfers pursuant to 11 U.S.C. §548. The Trustee in the motion for summary judgment cites section 548(a)(1) in its entirety, meaning inclusive of the two types of fraudulent transfers; namely; (i) transfers made with actual intent to hinder, delay, or defraud creditors; and (ii) transfers made for less than reasonably equivalent value. The Trustee in the *Reply to Defendant's Opposition to Plaintiff's Motion Requesting Summary Judgment* focuses only on actual fraudulent transfers pursuant to 548(a)(1)(A).

Section 548 provides:

"(a)(1) The Trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to occur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business." 11 U.S.C. §548(a)(1).

"Fraudulent transfers under section 548 differ greatly from preferences under section 547. In the simplest form, fraudulent transfer law is part of the general debtor-creditor relationship, applicable to all transactions, while preference law holds sway only in bankruptcy." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 548.01[3][a] (16th ed. 2016).  A claim for actual fraudulent transfer pursuant to 11 U.S.C. §548(a)(1)(A) or applicable state law must satisfy the requirements of Fed. R. Civ. P. 9(b). See Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.), 343 B.R. 444, 459-460 (Bankr. S.D.N.Y. 2006); In re Geltzer, 502 B.R. 760, 766 (Bankr. S.D.N.Y. 2013). However, if the claim is for constructive fraud under 11 U.S.C. §548(a)(1)(B), then the same need only comply with the liberal pleading standards of Fed. R. Civ. P. 8(a). See In re Verestar, Inc., 343 B.R at 468. Thus, to establish a claim under section 548(a)(1)(A), the plaintiff must plead facts showing that the transfer made by a defendant was with the intent to hinder, delay, or defraud present or future creditors of the transferor. See In re Verestar, Inc., 343 B.R. at 468.  However, if the trustee is the one that is asserting the actual fraudulent transfer claim, some courts have adopted a more liberal view because the trustee is an outsider to the transaction who must plead fraud from second hand knowledge. See Thaler v. Korn, 2014 U.S. Dist. Lexis 37152, *11 (E.D.N.Y. 2014) quoting Nisselson v. Softbank AM Corp., 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007).

Section 548(a)(1)(A) requires the trustee to prove intent. "…it has been held that the trustee need prove only the general intent to hinder, delay or defraud present or future creditors; proof of the target's identity is not required." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 548.04[1] (16th ed. 2016); See also; Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC), 439 B.R. 284, 304 (S.D.N.Y. 2010)("Actual fraudulent conveyance claims under Section 548(a)(1)(A) turn on the intent of

-17-

the debtor in making the transfer; the state of mind of the transferee is irrelevant"). "As a result, the trustee must show that the debtor had an intent to interfere with creditors' normal collection processes or with other affiliated creditor rights for personal or malign ends." Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 548.04[1][a] (16th ed. 2016). Proof of actual intent to hinder, delay, or defraud creditors is usually inferred from circumstantial evidence which is linked to the circumstances that surround the transfer. To determine whether fraudulent intent existed, courts consider the list referred to as the "badges of fraud." See Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §9A:33 Vol. 2 (5th ed. 2016), p. 349. "Not all or even a majority of the badges of fraud need to be found to raise an inference of fraudulent intent. A single badge of fraud may create suspicion, but in and of itself is insufficient to establish fraudulent intent, however, the presence of several badges can conclusively prove actual intent to hinder, delay, or defraud creditors." Id. at 350. "Courts look to the badges of fraud and the totality of circumstances surrounding the transfer in determining whether the debtor had the requisite actual intent. This requires a case-by-case individualized analysis of the debtor's intent. The existence of fraudulent intent is a factual question, usually inappropriate for summary judgment." Id at 351-352.

The Trustee's fraudulent transfer argument under section 548(a) is based upon the following: (i) "there was a monetary transfer;" (ii) "that what was transferred is subject to avoidance under applicable law;" (iii) "Defendant did not provide Debtor a reasonable equivalent value in exchange" (Docket No. 25, pgs. 7-8, ¶27); (iv) the transfer occurred from Debtor's bank account, thus Debtor had an interest in the transferred property; (v) Defendant cashed the checks and the transfer was perfected; (vi) the five transfers took place within one year of the filing of the bankruptcy petition and benefitted Defendant (Docket No. 44, pg. 15, ¶70-72) and (vii) "[i]n the alternative, if this Honorable Court concludes that the Defendant's

-18-

alleged payments of salary did not occur or were not related to the checks paid by to Defendant, the corporation did not have a previous debt owed to Defendant nor a reason to transfer the amount of $10,870.62. Therefore, the transfers were fraudulent, pursuant to Section 548 of the Bankruptcy Code" (Docket No. 44, pg. 16, ¶7).

The court finds that the Trustee's allegations as to the actual intent to hinder, delay or defraud under 11 U.S.C. §548(a)(1)(A) are insufficient by themselves, givne (lacking) and given that it is a fact intensive determination, which is inappropriate to be adjudicated by summary judgment.

The Trustee also argues that these transfers were constructively fraudulent transfers in which the Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation" pursuant to 11 U.S.C. §548(a)(1)(B). To avoid a transfer under section 548(a)(1)(B), the claimant must prove that the debtor received less than reasonably equivalent value in exchange for such transfer and that this transaction resulted in one of the four circumstances included as part of 11 U.S.C. §548(a)(1)(B)(ii)(I)- (IV) that evinces debtor's frail financial situation at the time of the transfer under section 548(a)(1)(B)(ii)(I-III) or that such transfer was "to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business" under section 548(a)(1)(B)(ii)(IV). See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 548.05[1] (16th ed. 2016). Thus, a trustee may not avoid a transaction solely because it was for less than reasonably equivalent value. "To avoid a transfer under this subsection, an essential element of the estate representative's claim is proof that the debtor received less than reasonably equivalent value in exchange for a transfer which resulted in either insolvency, undercapitalization, or an inability to pay debts when due." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §9A:35 Vol. 2 (5th ed.

2016), p. 357. Consequently, the the Plaintiff must prove one of the three financial condition tests under section 548(a)(1)(B)(ii)(I-III) which are: "(1) the debtor was actually insolvent, or was rendered insolvent, on a balance sheet basis, as a result of the transfer; (2) the debtor was engaged in business or a transaction, or about to engage in a transaction, leaving the debtor with unreasonably small capital; or (3) the debtor intended to incur, or believed it would incur debts beyond its ability to pay the as the debts matured." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §9A:37 Vol. 2 (5th ed. 2016), p. 370.

The last circumstance under subsection 548(a)(1)(B)(ii)(IV), does not require the trustee to prove the financial distress component or insolvency of the debtor, meaning that these transactions could have taken place while the debtor was financially solvent. See Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 548.05[4] (16th ed. 2016). The elements that the trustee must evince under this subsection are the following: "(1) the transfer was made, or the obligation was incurred, within two years before the bankruptcy petition was filed; (2) the beneficiary of the transfer or obligation was an insider under an employment contract; (3) the debtor received less than reasonably equivalent value in exchange for the transfer or obligation; and (4) the transfer was made or obligation was incurred out of the ordinary course of the debtor's business." Hon. Joan N. Feeney, Hon. Michael G. Williamson and Michael J. Stepan, Esq., Bankruptcy Law Manual, §9A:38 Vol. 2 (5th ed. 2016), p. 378-379.

The court finds that the Trustee's allegations pursuant to section 548(a)(1)(B) are insufficient and fail to establish all the necessary elements required under this section; namely that the debtor received less than reasonably equivalent value in exchange for such transfers and that these transactions resulted in one of the four circumstances included as part of 11 U.S.C. §548(a)(1)(B)(ii)(I)- (IV).

Conclusion

For the foregoing reasons, the Trustee's *Motion Requesting Entry of Summary Judgment* is denied and Defendant's *Opposition to Plaintiff's Motion for Summary Judgment* is granted in part as to the issue that the Trustee did not satisfy all of the requirements under 11 U.S.C. §547(b) and denied in part regarding the defenses presented pursuant to 11 U.S.C. §547(c)(1) and (c)(2) since the same are premature at this stage of the proceedings and the court need not analyze whether the same are meritorious.

SO ORDERED.

In San Juan, Puerto Rico, this 4th day of October, 2016.

Enrique S. Lamoutte
United States Bankruptcy Judge

-21-